## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

**CIVIL ACTION NO. 4:11-CV-00066-JHM**

**JAMES PHILLIPS**                                          **PLAINTIFF**

**V.**

**CHARLES MCCOLLUM III, et. al.**                          **DEFENDANTS**

### <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on Defendants Joseph E. Ternes, Jr., Margaret Keaton, Charles Abbot, Paul Titzer, Robert Gunter, Russell Sights, Robert M. Mills, James A. White, William M. Farmer, Thomas E. Davis and the City of Henderson's (collectively referred to herein as the "City Defendants") Motion to Dismiss [DN 13] and Motion to Dismiss Amended Complaint [DN 34]. Fully briefed, this matter is ripe for decision.

### I. BACKGROUND

On September 10, 2005, the City of Henderson enacted Ordinance No. 17-05 (the "Ordinance"). (<u>See</u> Compl. Ex. 1, Ordinance No. 17-05, Sec. 21-31(a).)[1] The Ordinance assesses a 1% occupational license tax on the net profits of "every person or business entity engaged in any business, trade, occupation, or profession" operating within the city limits. (<u>Id.</u>, Sec. 21-33(A).) Under the Ordinance, all business entities and employers that are required to obtain an occupational license from the city must file a city Occupational License Return by "April 15 of each year, except returns made on the basis of a fiscal year, which shall be made by the fifteenth day of the fourth month following the close of the fiscal year." (<u>Id.</u>, Sec. 21-37(A).) Furthermore, anyone who

---

[1] Ordinance No. 17-05 repealed the former ordinance, Ordinance No. 32-93, which had previously governed the collection of occupational taxes in Henderson. (<u>See</u> Ordinance No. 17-05, Sec. 21-48.)

willfully fails to make a return with the intent to evade payment of the tax is guilty of a Class A misdemeanor. (Id., Sec. 21-46(F).) The Ordinance took effect on January 1, 2006. (Id., Sec. 21-48.)

Sec. 21-42 of the Ordinance charges the Finance Department with the enforcement of the provisions of the Ordinance. (Id., Sec. 21-42.) Furthermore, the Finance Department "is empowered to prescribe, adopt, promulgate, and enforce rules and regulations relating to any matter or thing pertaining to the administration and enforcement" of the Ordinance's provisions. (Id.) The Ordinance requires the Mayor to appoint a Board of Occupational License Appeals consisting of the Director of Finance, the city Manager, and two (2) citizens of the city. (Id., Sec. 21-43.) The Board of Appeals is empowered to hear appeals from licensees and to render decisions on questions of interpretation of the Ordinance, questions of allocation of payroll and net profits, on proceedings of delinquent tax collections, and on the waiver of penalties assessed. (Id.) However, after the effective beginning of the Ordinance, the Board of Appeals was not established as required by Sec. 21-43. (Compl., Count I ¶ 14.)

Following the enactment of the Ordinance, Plaintiff James Phillips, a C.P.A. in Henderson, "took an active interest" in the Ordinance and its applicability to tax year 2005. (Id. at ¶ 7.) Plaintiff had a number of concerns regarding the implementation of the Ordinance. For instance, he was concerned about the use of 2005 as a taxable year for determining a person's 2006 occupational tax since the Ordinance "is totally devoid of any language concerning retroactivity of the ordinance as to tax year 2005." (Id. at ¶ 8.) Plaintiff believed that because the Ordinance took effect on January 1, 2006, that his first return for an occupational tax under the new Ordinance would not be due until April 15, 2007, at the conclusion of the first full taxable year following the Ordinance's enactment.

(See Compl. Ex. 7, <u>Phillips v. Commonwealth</u>, 324 S.W.3d 741, 744-45 (Ky. Ct. App. 2010)).

Plaintiff was also concerned with the City of Henderson's decision to treat taxpayers differently regarding the necessity of filing a 2006 return.  The Finance Department determined that in 2006, the Ordinance's first year of implementation, calendar year-end filers whose taxable year ended in December would be required to file a return by April 15, 2006, but that fiscal year-end filers whose taxable year ended in any month other than December would not be required to file a return until 2007.  (Compl. Count I ¶ 8.)  This was done so that fiscal year-end filers would not be doubly taxed for their 2006 occupational license tax.  (See Compl. Ex. 5, Trial Testimony of Margaret Keaton 45.)  Plaintiff, a calendar year-end filer, complained that because of this policy, and the manner in which he was taxed under the previous occupational tax ordinance, he would be doubly taxed for the months of January-April 2006 under the new Ordinance.  (Compl. Count I ¶ 11.)  Plaintiff was also concerned that the Board of Appeals had never been established as required by the Ordinance.  (<u>Id.</u> at ¶ 14.)

In an effort to have these issues addressed, Plaintiff attended a two-hour private meeting with the City Attorney and two members of the City's Finance Department.  (See Compl. Ex. 4, Letter from City of Henderson 1).  Plaintiff also wrote at least three letters to the Mayor and City Commissioners, (See Compl., Ex. 3 Letters), and attended two public City Commission meetings where he voiced his concerns. (See Compl. Count I ¶ 11).  On June 27, 2006, the City Manager, City Attorney, and City Finance Director issued a letter to Plaintiff addressing the retroactivity of the Ordinance as well as a concern regarding the taxation of businesses that have ceased operations. (Compl. Ex. 4, Letter from City of Henderson).  Notwithstanding the questions raised by Plaintiff in multiple venues, Plaintiff believed that many of his concerns had not been addressed to his

satisfaction and he did not file a return as required by the Ordinance in 2006.

In approximately January 2007, the County Prosecuting Attorney, Defendant Charles McCollum III, contacted Plaintiff to advise him that he was facing a potential misdemeanor charge for his failure to file a return as required by the Ordinance.  (Compl. Ex. 5, Letter to McCollum.) Defendant McCollum advised Plaintiff that if he simply filed a return that the misdemeanor charge would not be filed.  (Id.)  Rather than file a return, Plaintiff sent a letter back to Defendant McCollum highlighting several issues that still concerned him regarding the operation of the Ordinance in 2006.  (Id.)  Thereafter, on March 13, 2007, Defendant Margaret Keaton, swore out an affidavit in support of a criminal complaint against Plaintiff for failure to file a return as required by Sec. 21-37 of the Ordinance.  (See Compl., Ex. 6, Criminal Complaint.)

Plaintiff was tried before a jury on May 9, 2008.  The jury found Plaintiff "guilty of willfully failing to file the return with the intent to evade payment of the occupational license tax."  (See Compl., Ex. 7 Phillips, 324 S.W.3d at 743.)  The jury recommended a sentence of 120 days in jail and a $500.00 fine. (Id.)  The district court suspended the jail sentence but imposed the recommended fine and court costs. (Id.) Plaintiff appealed his conviction to the Henderson Circuit Court, which affirmed the conviction.  Id.  Thereafter, the Kentucky Court of Appeals took up Plaintiff's appeal on discretionary review.  (Id. at 742.)

Before the Kentucky Court of Appeals, Plaintiff argued that the Ordinance was unconstitutional on its face and as applied to him.  (Id. at 743.)  Plaintiff argued that the failure to established the Board of Appeals was a violation of his due process rights.  (Id.)  Plaintiff further argued that his conviction was in error because the Ordinance, as written, did not allow the City to tax him in 2006 based on his 2005 income and because the Commonwealth had failed to prove that

4

he had the requisite intent to evade payment of the tax.  (Id. at 744.)

The court found that the Ordinance was unconstitutional, as applied to Plaintiff, because the failure to establish the Board of Appeals denied him procedural due process. (Id.)  The court also found that the Commonwealth had failed to prove that Plaintiff had the requisite intent to evade the tax necessary for a conviction.  (Id. at 746.)  However, the court ruled that the City's decision to implement the 2006 tax based on Plaintiff's 2005 income was permissible under the law.  (Id. at 745.)

Following the reversal of his conviction, Plaintiff filed the instant suit alleging claims under 42 U.S.C. § 1983 and § 1985, as well as a litany of state law tort claims.  Plaintiff named as Defendants the City of Henderson as well as the following people in their official and individual capacities: the County Attorney, Charles McCollum III; the City Attorney, Joe Ternes, Jr.; two occupational license representatives, Margaret Keaton and Charles Abbot; the Assistant Finance Director, Paul Titzer; the Finance Director, Robert Gunter; the City Manager, Russell Sights; the members of the City Commission, Robert Mills, James White, and William Farmer; the Mayor of Henderson, Thomas Davis; and a John Doe known by the blogger name Pinehurst II.

The City Defendants, (all Defendants but Charles McCollum and John Doe/Pinehurst II) have now moved to dismiss the Complaint [DN 13] and to dismiss the Amended Complaint [DN 34].

## II. STANDARD OF REVIEW

The City Defendants' Motion to Dismiss states that it is moving for dismissal pursuant to Fed. R. Civ. P. 12 without specifically referencing under which part of Rule 12 they are moving. (See Defs.' Mot. to Dismiss [DN 13].)  However, the City Defendants have titled their various

argument sections as "failure to state a claim upon which relief can be granted," therefore the Court will analyze the motion under Fed. R. Civ. P. 12(b)(6).

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiff," League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), "accept all well-pled factual allegations as true[,]" id., and determine whether the "complaint states a plausible claim for relief[,]" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009).  Under this standard, the plaintiff must provide the grounds for its entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A plaintiff satisfies this standard only when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949.  A complaint falls short if it pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." Id. at 1949, 1950.  Instead, the allegations must "'show[ ] that the pleader is entitled to relief.'" Id. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. DISCUSSION

**Collateral Estoppel**

Plaintiff and the City Defendants each seek to bar the other from re-litigating certain issues that were previously litigated before the Kentucky Court of Appeals during Plaintiff's appeal of his misdemeanor conviction.  Plaintiff contends that the City Defendants are bound by the Kentucky Court of Appeals ruling that Plaintiff was denied due process of law.  The City Defendants contend that they are not bound by this ruling because there is not an identify of parties.  However, the City

6

Defendants argue that Plaintiff is bound by the Court of Appeals ruling that there was no constitutional violation when the City of Henderson treated calendar year-end filers and fiscal year-end filers differently for purposes of implementing the occupational tax.

Section 28 U.S.C. § 1738 generally requires "federal courts to give preclusive effect to state court judgments whenever the courts of the State from which the judgments emerged would do so." Haring v. Prosise, 462 U.S. 306, 313 (1983) (quoting Allen v. McCurry, 449 U.S. 90, 96 (1980)). Under Kentucky law, the doctrine of issue preclusion, also known as collateral estoppel, acts to bar the re-litigation of an issue that has previously been fully litigated. Issue preclusion requires four elements: (1) that the issues raised in the second case were the same issues litigated in the first case; (2) that the issues were actually litigated; (3) that they were actually decided; and (4) that they were necessary to the court's judgment. Coomer v. CSX Transp. Inc., 319 S.W.3d 366, 374 (Ky. 2010). However, state-court judgments will not be given collateral estoppel effect in § 1983 actions "where 'the party against whom an earlier court decision is asserted did not have a full and fair opportunity to litigate the claim or issue decided by the first court.'" Haring, 462 U.S. at 313 (quoting Allen, 449 U.S. at 95); see also Donovan v. Thames, 105 F.3d 291, 298 (6th Cir. 1997) (applying the "full and fair opportunity to litigate" requirement to collateral estoppel analysis under Kentucky law).

In Wallace v. Mamula, the Sixth Circuit addressed the application of collateral estoppel to an Ohio state-court criminal prosecution and a later § 1983 action. 30 F.3d 135 (6th Cir. 1994) (table decision). In Mamula, the plaintiff had been arrested and charged with disorderly conduct and resisting arrest. Id. at *1. However, the state trial court found that the charges violated the plaintiff's constitutional right to free speech and dismissed the charges with prejudice. Id. The plaintiff then filed a § 1983 action against the arresting officer alleging a violation of his

constitutional right to free speech.  Id.

The plaintiff argued that he was entitled to summary judgment as to his constitutional claim because the Ohio state court had already ruled that the defendant violated his First Amendment rights.  Id. at *2.  The Sixth Circuit found that the defendant police officer was not a party to the criminal action and did not have a full and fair opportunity to litigate the First Amendment issue. Id. at *3-4.  Therefore, the court found that collateral estoppel did not apply and that the First Amendment issue could be re-litigated in federal court.  Id. at *4.

The City Defendants argue that they are free to re-litigate the procedural due process issue in the instant § 1983 suit because they were not parties to the state court criminal appeal and did not have a full and fair opportunity to litigate this issue.  In response, Plaintiff cites Stemler v. City of Florence, 126 F.3d 856 (6th Cir. 1997).  In Stemler, the plaintiff brought a § 1983 action and attempted to re-litigate the state court's determination during her criminal trial that probable cause existed for her arrest.  Id. at 871.  The Sixth Circuit found that collateral estoppel applied and barred plaintiff from re-litigating that issue in her § 1983 action.  Id.  However, Stemler is distinguishable in that the plaintiff was attempting to re-litigate an issue that was decided during her own state-court criminal trial.  The plaintiff in Stemler was a party to the earlier state-court action and, therefore, had a full and fair opportunity to litigate the probable cause determination during that proceeding.

In the instant case, none of the City Defendants were parties to the earlier criminal action. Only Plaintiff and the Commonwealth of Kentucky were parties to that action.  Therefore, like the defendant in Mamula, none of the City Defendants had a full and fair opportunity to litigate the issue of procedural due process.  Accordingly, the Court finds that the doctrine of collateral estoppel does not apply to preclude the City Defendants from re-litigating the procedural due process issue.

The City Defendants also seek to apply the doctrine of collateral estoppel to bar Plaintiff from litigating his equal protection claim.  The City Defendants contend that the Kentucky Court of Appeals has already determined that the City of Henderson's decision to treat calendar year-end filers and fiscal year-end filers differently was constitutional.  However, the City Defendants have misinterpreted the Kentucky Court of Appeals' opinion on this issue.

The City Defendants cite the Kentucky Court of Appeals opinion for the proposition that there is "no legal impediment" to requiring Plaintiff, as a calendar year filer, to file a return based upon 2005 net profits while simultaneously not requiring fiscal year-end filers to file a return.  (See Def.'s Reply 3.)  However, the Kentucky Court of Appeals opinion does not stand for that proposition.  In fact, there is no equal protection discussion in that opinion.  Rather, the opinion addresses the retroactivity issue of whether under the Ordinance the City could base Plaintiff's 2006 returns on his 2005 net profits.  The court was "persuaded that the circuit court did not err by accepting the city's interpretation of its ordinance to require Phillips to file a 2006 return based on the 2005 net profits of his business.  We see no legal impediment to the city's decision to measure the occupational license tax in this manner." Phillips v. Commonwealth, 324 S.W.3d 741, 745 (Ky. Ct. App. 2010).  The Court finds that the Kentucky Court of Appeals opinion did not address Plaintiff's current equal protection claim, therefore, the issue was not actually decided as required by Kentucky law.  See Coomer, 319 S.W.3d at 274.  Accordingly, the Court finds that Plaintiff is not barred from litigating his equal protection claim based upon collateral estoppel.

**Procedural Due Process**

Plaintiff has alleged a procedural due process claim based on the failure to establish the Board of Appeals as required under the Ordinance.  The Fourteenth Amendment provides that no

state shall deprive any person of life, liberty or property without due process of law.  U.S. Const. amend XIV, § 1.  "The Fourteenth Amendment's guarantee of procedural due process assures that the deprivation of life, liberty, or property will not be effectuated without 'notice and opportunity for hearing appropriate to the nature of the case.'"  Barachkov v. 41B Dist. Court, 311 F. App'x 863, 871 (6th Cir. 2009) (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation omitted)).  When faced with a claim for violation of due process rights, the Court engages in a two-step analysis.  "First, the interest at stake must be a protected liberty or property interest under the Fourteenth Amendment. If such an interest exists, the court must then consider whether 'the deprivation of that interest contravened the notions of due process.'"  Am. Exp. Travel Related Servs. Co., Inc. v. Hollenbach, 630 F. Supp. 2d 757, 760 (E.D. Ky.2009) (quoting Wojcik v. City of Romulus, 257 F.3d 600, 609 (6th Cir. 2001)).

In his Complaint, Plaintiff contends that his right to procedural due process was violated when "[t]he subject ordinance had provisions for administrative remedies but those administrative remedies in the form of an appeal board were never set up by the City of Henderson and/or the Defendants[.]" (Compl. ¶ 37.)  To the extent that Plaintiff is claiming that he had a liberty interest in the establishment of the Board of Appeals, the argument is not well taken.  The Supreme Court has made it clear that "[p]rocess is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."  Olim v. Wakinekona, 461 U.S. 238, 250 (1983).  Furthermore, "an expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause."  Id. at 251 n.12.  The Court finds that Plaintiff cannot claim a liberty interest in the existence of the Board of Appeals itself, rather, Plaintiff must demonstrate the deprivation of a substantive right due to the absence of the

Board of Appeals.

To the extent that Plaintiff contends he suffered a due process violation through the deprivation of his property interest in his money, the Court finds that Plaintiff has failed to demonstrate that he was deprived of that interest. Nothing in the record indicates that Plaintiff ever paid the occupational tax required under the Ordinance for 2006. Nor were civil collection proceedings ever initiated. (See Compl., Ex. 7, Phillips, 324, S.W.3d at 744.) While one does have a property interest in his money, see Herrada v. City of Detroit, 275 F.3d 553, 556 (6th Cir. 2001), a due process action will not lie absent a deprivation of that interest. Because Plaintiff has failed to allege that he was deprived of his money, the Court finds that Plaintiff has failed to state a procedural due process claim for the deprivation of that property interest.

To the extent that Plaintiff contends he suffered a due process violation through his inability to use the process outlined in the Ordinance prior to his prosecution, the Court also rejects that argument. A similar argument was made in Butler v. Elle, 281 F.3d 1014 (9th Cir. 2002). The plaintiff in Butler filed a § 1983 action alleging a violation of his procedural due process rights following his acquittal on state court charges of failure to pay vehicle taxes as required by Idaho law. Id. at 1019. The plaintiff claimed that he was denied due process when the defendant tax inspector disregarded procedures under the Idaho Sales Tax Act which required notice to the taxpayer of any deficiency before commencing proceedings for collection. Id. at 1023. This "notice trigger[ed] an appeals process wherein the taxpayer ha[d] the opportunity to show that the taxes in question were in fact paid, or were not in fact due." Id. However, rather than notify the plaintiff of the deficiency and allow him to use the civil appeals process established under the law, the defendant tax inspector swore out an affidavit which was used to secure a search warrant. Id. at 1019. The warrant was

served and state criminal charges were filed.  Id.  The Plaintiff was eventually acquitted of these charges.  Id.

The plaintiff then filed a § 1983 action, alleging,  among other things, that his procedural due process rights were violated as a result of the defendant's failure to "follow the notice and assessment process" under the state code prior to criminally prosecuting him.  Id. at 1023.  The Ninth Circuit Court of Appeals recognized that the defendant tax inspector "did not follow the civil procedures for assessing and collecting a sales tax deficiency."  Nevertheless, the court found that there is

> nothing in the Idaho Tax Code that requires the State Tax Commission or its agents to proceed solely under the civil statutes for assessment and collection. Nor does Idaho law—or, certainly federal constitutional law—require a governmental unit to follow the civil administrative process for tax assessment and collection as a prerequisite to proceeding under the criminal statutes. In other words, the state administrative procedures upon which Butler relies are irrelevant to the issue at hand.

Id.  The court ruled that there was no violation of procedural due process resulting from the defendant's failure to permit the plaintiff to use the civil appeals process under the statute prior to initiating a criminal prosecution.  Id.  Furthermore, the court ruled that the plaintiff was afforded the necessary due process once he was charged with the state crime, in that he "received notice by the state court to appear and was given a hearing on the criminal tax charges against him."  Id.

The result in Butler is echoed in other similar cases as well.  In State v. Davis, the defendant was charged with willful failure to file a North Carolina Tax Return, a misdemeanor tax offense. 386 S.E.2d 743 (N.C. Ct. App. 1989).  The defendant claimed that he was not afforded the notice required under the tax code and sought to dismiss the charges on the grounds that his procedural due process rights were violated.  Id. at 746.  On appeal, the North Carolina Court of Appeals rejected this contention and found that North Carolina  "tax laws, like the federal tax statutes, impose both

civil and criminal sanctions." Id. at 747. The court ruled that the civil assessment was completely independent of criminal sanctions. Id. The court further found that there was no due process violation because "[a]ppellant was entitled to and received all the due process protections of a person charged under a criminal statute. He was not entitled to any procedural protections offered under the civil assessment statute." Id. See also Jasion v. Lay, 2010 WL 3943741 (E.D.N.C. Oct. 7, 2010) (noting the difference between civil and criminal enforcement proceedings in the tax setting and finding that "plaintiff cannot show his due process rights were violated by the state's failure to follow through with the civil tax assessment procedures prior to prosecuting plaintiff for tax-related crimes."); Conneaut v. Babcock, 2010 WL 3958792, at *2-3 (Ohio Ct. App. Oct. 8, 2010) (finding no procedural due process violation where an individual was prosecuted for failure to file a tax return before he had the opportunity to conduct a civil administrative appeal guaranteed to him under the city tax ordinance).

In the instant case, Plaintiff contends that his procedural due process rights were violated when he was prosecuted for failure to file a return without being afforded the opportunity to go before the Board of Appeals created under the Ordinance. The Ordinance, much like the ordinances involved in the cases above, provides for both civil and criminal penalties. For instance, a business entity who fails to file a return before the date required "may be subject to a penalty equal to 5% of the tax due[.]" (Henderson Ordinance Sec. 21-46(A)(1).) Furthermore, the City of Henderson is entitled, under the Ordinance, to "enforce the collection of the occupational tax due, and any taxes, penalties, and interest, . . . by civil action in a court of appropriate jurisdiction." (Id. at Sec. 21-46(E).) However, the Ordinance makes clear that *"[i]n addition to the penalties prescribed in this section*, any business entity or employer who willfully fails to make a return . . . with the intent to

13

evade payment of the tax . . . shall be guilty of a Class A misdemeanor." (Id. at Sec. 21-46(F) (emphasis added).)  Clearly, the Ordinance permits two types of penalties, both civil and criminal.

While the Board of Appeals has significant power to determine issues associated with the civil collection of the occupational tax, the Kentucky legislature has placed the prosecution of misdemeanor violations under local ordinances squarely in the hands of the county attorney.  See K.R.S. § 15.725(2).  Under Kentucky law, the county attorney is responsible for the criminal penalties associated with local ordinances, not the Board of Appeals.  Therefore, Plaintiff's inability to access a civil procedure guaranteed under the Ordinance and to appear before the Board of Appeals is of no concern in the instant action.  Plaintiff was afforded all of the necessary process associated with the attempted deprivation of his liberty during his prosecution in the form of notice and a jury trial.

The Court also finds unpersuasive any argument by Plaintiff that he was deprived of a liberty or property interest due to the burden of defending himself during his criminal trial and appeals.  The Sixth Circuit has found such a claim to be insufficient to support a procedural due process violation.  See Richardson v. City of South Euclid, 904 F.2d 1050, 1052-53 (6th Cir. 1990).  Accordingly, the Court finds that Plaintiff has failed to state a claim for a violation of his procedural due process rights and, therefore, the City Defendants' motions to dismiss this claim are **GRANTED**.

**Substantive Due Process**

Plaintiff alleges in the Complaint that Sec. 21-41 of the Ordinance, which states that "[n]o suit shall be maintained in any court to restrain or delay the collection or payment of the tax levied by this chapter," violates his substantive due process rights.  (Compl. ¶ 36.)  Plaintiff alleges that he was charged with violating the ordinance by the Defendants without the ability to effectively

14

challenge it through a lawsuit, which violated his substantive due process rights.  (Compl. ¶ 40.)

> Substantive due process "protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action." Sutton v. Cleveland Bd. of Educ., 958 F.2d 1339, 1350 (6th Cir. 1992). A substantive due process claim requires the plaintiff to allege (1) a constitutionally protected property interest that (2) was deprived by arbitrary and capricious state action.

MSI Regency, Ltd. v. Jackson, 433 F. App'x 420, 429 (6th Cir. 2011).

In the instant action, it appears that Plaintiff is alleging that the Ordinance deprives him of his constitutionally protected interest to challenge unconstitutional legislation. However, Plaintiff has not demonstrated that he was actually deprived of this interest.  The ordinance precludes suits which seek to *restrain or delay the collection of the tax*, not suits which seek to challenge the constitutionality of the tax.  Contrary to Plaintiff's interpretation of this provision, Sec. 21-41 merely states that anyone wishing to challenge the constitutionality of the Ordinance in court, may not do so without first paying his taxes.  As the Supreme Court has noted, "[a]llowing taxpayers to litigate their tax liabilities prior to payment might threaten a government's financial security, both by creating unpredictable interim revenue shortfalls against which the State cannot easily prepare, and by making the ultimate collection of validly imposed taxes more difficult." McKesson Corp. v. Div. of Alcoholic Beverages and Tobacco, Dept. of Bus. Regulation of Fl., 496 U.S. 18, 37 (1990).  In the instant case, the Court finds that this provision does not deprive Plaintiff of his ability to challenge the constitutionality of the Ordinance.  Accordingly, the Court finds that Plaintiff has failed to state a claim for a violation of his substantive due process rights and, therefore, the City Defendants' motions to dismiss this claim are **GRANTED**.

**Equal Protection**

Plaintiff alleges that the City Defendants' decision not to require fiscal year-end filers to file

returns in 2006 violated his right to equal protection under the law.  The City Defendants contend that the equal protection claim should be dismissed because Plaintiff has failed to allege what group he belongs to or who outside of that group was treated differently.   However, after the City Defendants filed their motion to dismiss containing this argument, Plaintiff was granted leave to amend and filed his First Amended Complaint.  (See Amended Compl. [DN 30].)

The Amended Complaint adopts and incorporates the original Complaint, but also outlines in greater detail Plaintiff's equal protection claim.  Plaintiff alleges that the "Defendants each singularly, and/or collectively violated the Plaintiff's equal protection rights under the Fourteenth (14th) Amendment" when: (1) they prosecuted Plaintiff for failing to file a tax return for 2005 when Plaintiff had previously paid his 2005 tax: (2) they did not require fiscal year filers to pay 2005 taxes under the new Ordinance; and (3) they required Plaintiff to file 2005 taxes even though he would be doubly taxed.  (See id. at ¶¶ 2-4.)  Plaintiff alleges that these actions were arbitrary and capricious and that there was no rational basis for the distinction between calendar year-end filers and fiscal year-end filers.  (Id. at ¶ 5.)

Plaintiff's equal protection claim is a selective enforcement claim.  "Selective Enforcement claims are judged according to ordinary Equal Protection standards, which require a petitioner to show both a discriminatory purpose and a discriminatory effect."  Gardenhire v. Schubert, 205 F.3d 303, 318 (6th Cir. 2000).  Plaintiff contends that the Ordinance was enforced differently against him, as a calendar year-end filer, than other similarly situated taxpayers, who filed their returns based on a fiscal year-ending in any month other than December.  Plaintiff's Response contends that he is claiming equal protection as a "class of one."  The Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been

16

intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

The Court finds that Plaintiff has alleged that he is a member of a "class of one," that other similarly situated taxpayers were treated differently, and that there was no rational basis for that varying treatment. At this stage of the litigation, the Court finds that the factual allegations of the Amended Complaint, taken as true, state an equal protection claim and, therefore, the City Defendants' motions to dismiss this claim are **DENIED**.

**Civil Conspiracy**

Plaintiff has also alleged that the City Defendants engaged in a civil conspiracy in an attempt to deprive him of his procedural and substantive due process rights in violation of § 1983. (See Compl. ¶¶ 38, 40.) In order to succeed on a civil conspiracy claim a plaintiff must show that "there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." Hooks v. Hooks, 771 F.2d 935, 944 (6th Cir. 1985). The Court has already found that Plaintiff has failed to state a claim for relief for either a procedural or substantive due process violation. Therefore, Plaintiff is unable to demonstrate that an act was committed in furtherance of a conspiracy that caused him a procedural or substantive due process deprivation. The Court finds that Plaintiff has failed to state a civil conspiracy claim for a violation of his procedural or substantive due process rights under 42 U.S.C. § 1983, therefore, the City Defendants' motions to dismiss this claim are **GRANTED**.

Plaintiff has also alleged a claim for conspiracy to violate his equal protection rights under 42 U.S.C. § 1985(3). (See Compl. ¶ 47.) Section 1985(3) states in pertinent part that a Plaintiff may

17

have a cause of action "[i]f two or more persons . . . conspire . . . for the purpose of depriving . . .

any person or class of persons of the equal protection of the laws." 42 U.S.C. § 1985(3).  The Sixth

Circuit has "held that § 1985(3) applies only where the discrimination was based on race or

membership in another class comprising 'discrete and insular minorities that receive special

protection under the Equal Protection Clause because of inherent personal characteristics.'" Royal

Oak Entm't, LLC v. City of Royal Oak, Mich., 205 F. App'x 389, 399 (6th Cir. 2006) (quoting

Volunteer Med. Clinic, Inc. v. Operation Rescue, 948 F.2d 218, 224 (6th Cir. 1991)).

In Royal Oak, the Sixth Circuit addressed whether plaintiffs claiming to be part of a "class

of one" for equal protection purposes under § 1983 could claim the same status and succeed under

§ 1985(3).  The Sixth Circuit rejected such a theory and stated that "[i]t is clear that even if these

Plaintiffs can claim to be a 'class of one,' their membership in that class is 'not entitled to the kind

of special protection which would make § 1985(3) applicable to Plaintiff[s'] claim.'" Id. (quoting

McGee v. Schoolcraft Cmty. Coll., 167 F. App'x 429, 436 (6th Cir. 2006)).

The instant case is analogous to Royal Oak.  Plaintiff has failed to allege that he was

discriminated against based on membership in a class comprising discrete and insular minorities that

receive special protection due to inherent personal characteristics.  The Court finds that Plaintiff's

claim to be a member of a "class of one" based upon his tax filing status is not sufficient to state a

§ 1985(3) claim.  Accordingly, the Court finds that Plaintiff has failed to state a claim under 42

U.S.C. § 1985(3) and, therefore, the City Defendants' motions to dismiss this claim are **GRANTED**.

**Federal Qualified Immunity**

The City Defendants contend that to the extent the Complaint successfully alleges a

deprivation of a constitutional right that the Complaint should still be dismissed because the City

18

Defendants are entitled to qualified immunity.  As the Court has found that Plaintiff's claim for equal protection sufficiently alleges a constitutional violation, the Court will restrict its qualified immunity analysis to that claim.

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Miller v. Sanilac Cnty., 606 F.3d 240, 247 (6th Cir. 2010) (quoting Phillips v. Roane Cnty., 534 F.3d 531, 538 (6th Cir. 2008)).  To demonstrate that the City Defendants are not entitled to qualified immunity, Plaintiff must allege that a constitutional right was violated and that the right was clearly established at the time of the violation, i.e., that a reasonable governmental employee confronted with the same situation would have known that enforcing a tax ordinance against one group of taxpayers but not against a similarly situated group, without a rational basis for distinguishing between the two, would violate the Plaintiff's rights.  Scott v. Harris, 550 U.S. 372, 377 (2007); Pearson v. Callahan, 555 U.S. 223 (2009).  The Court's analysis of the alleged facts is undertaken in the light most favorable to the party asserting the injury.  Ammex, Inc. v. Durant, 381 F. App'x 482, 485 (6th Cir. May 26, 2010).

Taken in the light most favorable to Plaintiff, the Court finds that in 2006, the City Defendants would have been aware that treating similarly situated taxpayers differently without a rational basis for doing so violated Plaintiff's constitutional rights.  Accordingly, the Court finds that the City Defendants are not entitled to qualified immunity as to the equal protection claim at this stage of the litigation and their motions to dismiss based upon this theory are **DENIED**.

19

**State Law Claims**

Plaintiff has alleged that "[t]he conduct of the [sic] all of the Defendants toward the Plaintiff constitutes the torts of excessive execution, false arrest, defamation, libel and slander, outrage, negligent infliction of emotional distress, intentional infliction of emotional distress," malicious prosecution and tortiously and intentionally interfering with Plaintiff's employment and business opportunities.[2]  (See Compl. ¶¶ 51-54.)  The City Defendants have moved to dismiss these claims primarily on immunity grounds.  The City Defendants contend that the claims against the City of Henderson and the individual City Defendants in their official capacities should be dismissed pursuant to the Claims Against Local Governments Act, K.R.S. § 65.2003, and that the claims against the individual City Defendants in their individual capacities should be dismissed pursuant to the doctrine of qualified official immunity.

The Court will first address the official capacity claims.  K.R.S. § 65.2003 states in pertinent part that

> Notwithstanding KRS 65.2001, a local government shall not be liable for injuries or losses resulting from:
>
> (1) Any claim by an employee of the local government which is covered by the Kentucky workers' compensation law;
>
> (2) Any claim in connection with the assessment or collection of taxes;
>
> (3) Any claim arising from the exercise of judicial, quasi-judicial, legislative or quasi-legislative authority or others, exercise of judgment or discretion vested in the

---

[2] The City Defendants moved to dismiss the malicious prosecution claim to the extent that it was brought under 42 U.S.C. § 1983.  However, Plaintiff has conceded that the only malicious prosecution claim that he has alleged is a state tort claim.  (See Pl.'s Resp. 21 ("[I]rrespective of any issues or claims under the Fourth Amendment, Phillips Complaint of Malicious Prosecution is a pendent State Law claim brought to this Court under ancillary jurisdiction.").)

local government, which shall include by example, but not be limited to:

> (a) The adoption or failure to adopt any ordinance, resolution, order, regulation, or rule;
> (b) The failure to enforce any law;
> (c) The issuance, denial, suspension, revocation of, or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authorization;
> (d) The exercise of discretion when in the face of competing demands, the local government determines whether and how to utilize or apply existing resources; or
> (e) Failure to make an inspection.

> Nothing contained in this subsection shall be construed to exempt a local government from liability for negligence arising out of acts or omissions of its employees in carrying out their ministerial duties.

A city government is considered a local government for purposes of this statute. <u>See</u> K.R.S. § 65.200(3). Furthermore, "when an officer or employee of a governmental agency is sued in his/her representative capacity, the officer's or employee's actions are afforded the same immunity, if any, to which the agency, itself, would be entitled[.]" <u>Yanero v. Davis</u>, 65 S.W.3d 510, 522, (Ky. 2001).

The City Defendants contend that the City of Henderson and the other City Defendants in their official capacities should be granted immunity under K.R.S. § 65.2003(2) because the state law torts alleged by Plaintiff are claims in connection with the assessment of taxes. Plaintiff contends that immunity does not apply to the City Defendants because the statute specifically states that local governments are still liable for an employee's negligent actions in carrying out ministerial duties. Plaintiff argues that the City Defendants' failure to establish the Board of Appeals, as required by the Ordinance, was the negligent performance of a ministerial duty. Therefore, Plaintiff argues that none of the City Defendants are entitled to immunity regarding their official capacity claims.

Importantly, the City Defendants contend that the Plaintiff's claims are ones made in connection with the assessment of taxes, and Plaintiff does not dispute that. (<u>See</u> Pl.'s Resp. to

Defs.' Mot. to Dismiss 10-12.)  Rather, Plaintiff argues that there was negligence associated with the exercise of ministerial duties which makes the immunity under K.R.S. § 65.2003 inapplicable. However, the Kentucky Supreme Court has held that the last sentence found in K.R.S. § 65.2003, disallowing immunity for ministerial acts, applies only to subsection (3), and not to an invocation of immunity brought under K.R.S. § 65.2003(2) for claims made in connection with the assessment of taxes.  See Schwindel v. Meade Cnty., 113 S.W.3d 159, 166 (Ky. 2003).  Therefore, it is of no concern to the present action that a ministerial duty may have been performed negligently since Plaintiff has conceded that his claims are ones made in connection with the assessment of taxes. Accordingly, the Court finds that Defendant City of Henderson and the other City Defendants, in their official capacities, are entitled to immunity related to Plaintiff's state law tort claims under K.R.S. § 65.2003(2).  Therefore, the City Defendants' motions to dismiss the official capacity claims are **GRANTED**.

The City Defendants have also argued that they are entitled to qualified official immunity regarding the state law claims brought against them in their individual capacities.  Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions; (2) performed in good faith; and (3) which are within the scope of the employee's authority.  Yanero v. Davis, 65 S.W.3d 510, 522 (Ky. 2001).  The initial burden of establishing qualified official immunity rests with the public officer or employee and requires that he make a prima facie showing "that the act was performed within the scope of his/her discretionary authority." Id. at 523.  After such a showing, the burden then "shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act was not performed in good faith."  Id.

In the instant case, the City Defendants have failed to make a prima facie showing that their

actions were performed within the scope their discretionary authority.  The City Defendants' memorandum in support of their motion to dismiss is extremely brief on this issue and states only that discretionary acts include the implementation of rules and the determination to undertake and enforcement action, which are "precisely the sort of things about which Phillips complains."  (Def. Mem. in Support of Mot. to Dismiss 16.)  The Court recognizes the difficulty in ascertaining the exact actions about which Plaintiff complains.  However, the Court cannot grant qualified official immunity at this time based on the current record.  After some initial discovery, this issue should be readdressed.  Therefore, the City Defendants' motions to dismiss the individual state law claims based upon qualified official immunity is **DENIED** at this stage in the litigation .

The City Defendants also identify specific deficiencies regarding Plaintiff's excessive execution, false arrest, and defamation claims.  The City Defendants cite <u>Simms v. City of Harrodsburg</u>, 2007 WL 2792174, at * 6 (E.D. Ky. Sept. 21, 2007), for the proposition that Plaintiff's claim of excessive execution should be dismissed because such a tort does not exist under Kentucky law.  The Court agrees and finds that the City Defendants' motions to dismiss the excessive execution claim are **GRANTED**.

The City Defendants further argue that Plaintiff's false arrest claim should be dismissed because Plaintiff has not alleged, nor can he allege, that he was ever arrested.  The Kentucky Supreme Court has found that

> False imprisonment is the intentional confinement or instigation of confinement of a plaintiff of which confinement the plaintiff is aware at the time. <u>See</u> Dan B. Dobbs, The Law of Torts § 36, p. 67 (2000).  And "[f]alse arrest is a term that describes the setting for false imprisonment when it is committed by an officer or by one who claims the power to make an arrest." <u>Id.</u>

<u>Dunn v. Felty</u>, 226 S.W.3d 68, 71 (Ky. 2007).  As Plaintiff has failed to allege that he was ever

23

intentionally confined, the Court finds that the City Defendants' motions to dismiss the false arrest claim are **GRANTED**.

Lastly, the City Defendants contend that Plaintiff's defamation claim should be dismissed because it is barred by the one year statute of limitations found in K.R.S. § 413.140(1)(d).  In his Response, Plaintiff does not address this argument.  Therefore, the Court considers it conceded by Plaintiff and finds that the City Defendants' motions to dismiss the defamation claim are **GRANTED**.  See Ctr. for Biological Diversity v. Rural Utils. Serv., 2009 WL 3241607, at *3 (E.D. Ky. Oct. 2, 2009) ("When a party fails to respond to a motion or argument therein, the Sixth Circuit has held that the lack of response is grounds for the district court to assume opposition to the motion is waived, and grant the motion.") (citing Humphrey v. U.S. Attorney General's Office, 279 F. App'x 328, 331 (6th Cir. 2008)).

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants Joseph E. Ternes, Jr., Margaret Keaton, Charles Abbot, Paul Titzer, Robert Gunter, Russell Sights, Robert M. Mills, James A. White, William M. Farmer, Thomas E. Davis and the City of Henderson's (collectively referred to herein as the "City Defendants") Motion to Dismiss [DN 13] and Motion to Dismiss Amended Complaint [DN 34] are **GRANTED IN PART** and **DENIED IN PART**.

The motions to dismiss are **GRANTED** as to Plaintiff James Phillips's 42 U.S.C. § 1983 claims based upon a procedural due process violation and a substantive due process violation; as to his civil conspiracy claims under 42 U.S.C. § 1983 and § 1985(3); as to his state law claims against the City Defendants in their official capacities, and as to the state law excessive execution, false arrest, and defamation claims against the City Defendants in their individual capacities.

The motions to dismiss are **DENIED** as to Plaintiff's 42 U.S.C. § 1983 claim based upon an equal protection violation and as to the remaining state law claims against the City Defendants in their individual capacities.

cc: counsel of record