# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### OWENSBORO DIVISION

**CIVIL ACTION NO. 4:11-CV-00066-JHM**

**JAMES PHILLIPS**                                                      **PLAINTIFF**

**V.**

**JOSEPH E. TERNES, JR., et. al.**                                     **DEFENDANTS**

### Memorandum Opinion and Order

This matter is before the Court on the Motion for Summary Judgment [DN 96] of the Defendants, Joseph E. Ternes, Jr., Margaret Keaton, Charles Abbott, Paul Titzer, Robert Gunter, Russell Sights, Robert M. Mills, James A. White, William M. Farmer, Thomas E. Davis, and the City of Henderson. The Plaintiff, James Phillips, has responded [DN 105]. The Defendants have replied [DN 108]. For the following reasons, the Defendants' motion [DN 96] is **GRANTED**.

## I. BACKGROUND

The Plaintiff, a C.P.A. in Henderson, Kentucky, "took an active interest" in the City of Henderson's enactment of a new occupational license tax ordinance. (Compl. Cnt. I [DN 1] ¶ 7.) Ordinance No. 17-05 (the "Ordinance") assesses a 1% occupational license tax on the net profits of "every person or business or business entity engaged in any business, trade, occupation, or profession" operating within the Henderson city limits. (Compl. Ex. 1, Ord. No. 17-05 [DN 9-1] § 21-33(A).) Under the Ordinance, all business entities and employers that are required to obtain an occupational license must file a city Occupational License Return by "April 15 of each year, except returns made on the basis of a fiscal year, which shall be made by the fifteenth day of the fourth month following the close of the fiscal year." (Id. § 21-37(A).) The Ordinance repealed former Ordinance No. 32-93, (id. § 21-48), under which businesses paid "an annual business

license fee to the city" on April 30th of each year. The fee was set forth in a table and based upon ranges of gross receipts (or in some cases, gross profits) from the prior calendar year. (Compl. Ex. 2, Ord. No. 32-93 [DN 9-2] §§ 21-33(a), 21-34, 21-35.)

The Plaintiff had a number of concerns regarding the Ordinance's implementation. Due to these concerns, he wrote letters to the mayor and the city commissioners. He also attended public forums, city commission meetings, and private meetings with government officials. (See Compl. Cnt. I [DN 1] ¶ 11; Compl. Ex. 4, Letter from City [DN 9-4]; Compl. Ex. 3, Letters [DN 9-3].) The Plaintiff was concerned that the Ordinance was retroactive as to the tax year of 2005. (Compl. Cnt. I [DN 1] ¶ 9.) He was also concerned with the City of Henderson's decision to treat calendar year-end tax filers differently than fiscal year-end tax filers regarding the necessity of filing a 2006 return. (See id. ¶ 8.) Ultimately, he filed the instant suit alleging claims under 42 U.S.C. § 1983 and § 1985, as well as myriad state-law tort claims.

On February 9, 2012, this Court dismissed a large part of the Plaintiff's initial complaint, including his claims of procedural and substantive due process violations, civil conspiracy, false arrest, excessive execution, and defamation. (Mem. Op. & Order [DN 44].) The former County Attorney of Henderson, Charles McCollum III, was later dismissed on immunity grounds. (Mem. Op. & Order [DN 67].) Now, the remaining Defendants have now moved for summary judgment on the remaining claims. The remaining claims include four claims which are asserted against all the remaining Defendants: (1) a "class of one" § 1983 equal protection claim, alleging that there was "selective enforcement" of the Ordinance; (2) a § 1983 due process claim, alleging that the Ordinance is "void for vagueness"; (3) a § 1983 due process claim, alleging that the Defendants failed "to provide a post-deprivation remedy **AFTER** Plaintiff filed his 2006 City of Henderson Tax returns in April of 2007"; and (4) a § 1983 First Amendment retaliation claim, alleging that

the Plaintiff's prosecution was "substantially caused by his public and private objections" to the Ordinance. There are also remaining state-law claims against Defendants Ternes, Keaton, Abbott, Titzer, Gunter, Sights, Mills, White, Farmer, and Davis in their individual capacities, including: (1) state-law "outrage, negligent infliction of emotional distress, intentional infliction of emotional distress" claims; (2) a state-law tortious interference with "Plaintiff's employment and business opportunities" claim; and (3) a state-law malicious prosecution claim. (See Mem. Op. & Order [DN 44]; 2d Am. Compl. [DN 90] ¶¶ 18, 20, 21, 23; Compl. [DN 1] ¶¶ 51, 52, 54.)

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

## III. DISCUSSION

In their summary judgment motion, the Defendants argue that: (1) the remaining federal claims must be dismissed because there was no federal constitutional violation and, alternatively, the claims are barred by immunity; and (2) the remaining state-law claims must be dismissed because the Plaintiff has failed to prove them. (Mem. in Supp. of Mot. for Summ. J. [DN 96-1] 15-27.) In his response, the Plaintiff argues only that the City's enforcement of the Ordinance violated his Equal Protection rights under the 14th Amendment. (Pl.'s Mem. in Opp. to Defs.' Mot. for Summ. J. [DN 105].) Thus, the Plaintiff has abandoned all but one of his remaining federal and state-law claims. These abandoned claims are accordingly **DISMISSED**. See, e.g., Brown v. VHS of Mich., Inc., 545 Fed. App'x 368, 372 (6th Cir. 2013) (noting that "a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment"); Hicks v. Concorde Career Coll., 449 Fed. App'x 484, 487 (6th Cir. 2011) (holding that a district court properly declined to consider the merits of a claim when a plaintiff failed to address it in a response to a summary judgment motion). This leaves only one claim for the Court's consideration: the Plaintiff's "class of one" § 1983 equal protection claim, alleging that there was "selective enforcement" of the Ordinance.

The Plaintiff's "class of one" § 1983 equal protection claim is based on the fact that when the Ordinance was implemented, fiscal year-end taxpayers were treated differently than calendar year-end taxpayers for the taxable year of 2006. The parties do not dispute that a distinction was drawn between these groups of taxpayers. Section 21-42 of the Ordinance charges the Finance Department with enforcing the Ordinance's provisions. (Compl. Ex. 1, Ord. No. 17-05 [DN 9-1] § 21-31(a).) The Finance Department determined that in 2006, the first year of implementing the Ordinance, calendar year-end filers whose taxable year ended in December would be required to

4

file a return by April 15, 2006, but fiscal year-end filers whose taxable year ended in any month other than December would not be required to file a return until 2007. (Compl. [DN 1] ¶ 8.) The Finance Department made this distinction so that fiscal year-end filers would not be doubly taxed for their 2006 license. Margaret Keaton, an employee in the City's Finance Department, explained that different due dates were imposed because under the new Ordinance, businesses needed to have completed federal income tax returns in order to determine their net profits and compute their occupational license tax. (See Dep. of Margaret Helen Keaton [DN 96-5] 104.)

According to Ms. Keaton, due to the way that businesses were phased-in under the new Ordinance, "10 or 15" taxpayers in Henderson with September, October, and November fiscal years would not have to pay under the new Ordinance until 2007. (Id. at 97; see also Dep. of Paul Titzer [DN 96-6] 33-34.) Ms. Keaton explained that given the small amount of money involved, and as matters of administrative convenience and fairness, this phase-in structure was determined to be a reasonable way to implement the Ordinance as applied to the fiscal year-end taxpayers:

> Basically we had to start somewhere. . . . There are many ways you could have possibly come up with an accurate amount of what you owed. You might combine two tax returns and worked through that somehow. I suppose the City could have done some type of prorating, not necessarily that that would be accurate, depending on what type of business you had. And I'm sure there are other ways that it could have been determined, but at that time -- once again, I didn't make the decision, but through the decisions that were made, it was decided that the fiscal year filers would have to file their first net profit return under the new ordinance using the first full year they would've had . . . the information for.

(Dep. of Margaret Helen Keaton [DN 96-5] 104-05.) When asked whether she would agree that "a part of that thought process includes just an administrative convenience to handling it that way," Ms. Keaton answered: "Not only administratively but for tax prepare[r]s such as Mr. Phillips, for business owners, for everyone." (Id. at 105.)

The Plaintiff argues that there was no rational basis for this distinction. According to him, it is irrational "to believe that taxing some taxpayers for all or some of their 2005 earnings and not taxing others until 2006 could accomplish the stated goal of taxing all earnings by all taxpayers' earnings in Henderson at 1% beginning January 1, 2006." (Pl.'s Mem. in Opp. to Defs.' Mot. for Summ. J. [DN 105] 4.) The Plaintiff argues that he is substantially similar in class to all other taxpayers under the Ordinance in terms of whether the tax was paid, but despite this similar nature, he was treated differently from those fiscal year-end filers with fiscal years ending in September, October, and November. (See id. at 5.) The Plaintiff states that "nothing in the Ordinance allows some taxpayers to get the benefit of not paying at all on some of their otherwise taxable income simply because of their fiscal year end date . . . ." (Id. at 6.)

A person can claim equal protection as a "class of one" when he has "been intentionally treated differently from others similarly situated and . . . there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). A plaintiff in a selective enforcement action has a "demanding" burden. Stemler v. City of Florence, 126 F.3d 856, 873 (6th Cir. 1997). Indeed, "[u]nder the rational basis test, courts will not overturn government action 'unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the [government's] actions were irrational.'" United States v. Green, 654 F.3d 637, 651-52 (6th Cir. 2011) (quoting Kimmel v. Fla. Bd. of Regents, 528 U.S. 62, 84 (2000)). "There are two ways that a 'class-of-one' plaintiff may demonstrate that a government action lacks a rational basis: (1) showing pure arbitrariness by negativing every conceivable basis that might support the government's decision; or (2) showing an illegitimate motive such as animus or ill will." Id. (citing Warren v. City of Athens, Ohio, 654 F.3d 637, 651-52 (6th Cir. 2011)). The Plaintiff

appears to rely on the former theory; he nowhere asserts animus or ill will. However, the Court agrees with the Defendants that the Plaintiff has not made the requisite showing in this case.

As was the case in TriHealth, Inc. v. Board of Commissioners, 430 F.3d 783, 791 (6th Cir. 2005), the record here contains "ample undisputed evidence" of the Finance Department's thought process behind the Ordinance's implementation. The Finance Department considered its own administrative need to simplify the new taxing system, as well as the needs of tax preparers and business owners. The Finance Department also wanted to ensure that in 2006, fiscal year-end taxpayers were not doubly-taxed. The Court finds that these considerations were rational. The Plaintiff simply has simply not carried his "heavy burden" of disproving them, as well as "every conceivable" other basis for the City's actions. After all, it has long been the rule that equal protection does not prohibit reasonable classifications in the taxation context, as long as there is a rational basis for it. See Carmichael v. S. Coal & Coke Co., 301 U.S. 495 (1937). Further, the Supreme Court has made clear that "[a]dministrative convenience and expense in the collection or measurement of the tax" can be a valid reason for treating taxpayers differently. Id. at 511.

The Court finds the Supreme Court's recent decision in Armour v. City of Indianapolis, Ind., 132 S. Ct. 2073 (2012), is particularly persuasive here. In that case, the Court rejected the view that equal protection requires absolute equality in revenue collection. The case arose after the City of Indianapolis changed its method of funding sewer projects. Under the old system, homeowners could pay their assessments in a lump sum or by installment. The Public Works Department determined that in implementing this new system, it would forgive all assessment amounts that were due and owing as of November 1, 2005. Id. at 2077-79. As a result, those who were paying their assessments by installment "would not have to make further payments but those who had already paid their assessments would not receive refunds." Id. at 2079.

The homeowners who had paid their assessments in lump sums filed suit, claiming that the city's refusal to issue refunds violated equal protection principles. Id. at 2079-80. The Court, however, rejected this challenge, noting that "administrative considerations can justify a tax-related distinction." Id. at 2081. The record showed that the city had decided that the administrative cost of collecting the installment debt from those still paying under the old system simply was not justified, and that adding refunds would have meant adding further administrative costs. Id. The court found that these administrative considerations justified the distinctions made. Id. at 2082-83. Moreover, the fact that other methods were available by which the city could have implemented its new system did not alter the outcome:

> [T]he Constitution does not require the City to draw the perfect line nor even to draw a line superior to some other line it might have drawn. It requires only that the line actually drawn be a rational line.

Id. at 2083. The Court finds that here, like in Armour, a rational line was drawn. Therefore, the Defendants' summary judgment motion [DN 96] is **GRANTED**.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the Motion for Summary Judgment [DN 96] of the Defendants, Joseph E. Ternes, Jr., Margaret Keaton, Charles Abbott, Paul Titzer, Robert Gunter, Russell Sights, Robert M. Mills, James A. White, William M. Farmer, Thomas E. Davis, and the City of Henderson is **GRANTED**.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

August 28, 2014

cc: counsel of record